**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**JAMES CHAMBERLAIN,**

       **Plaintiff,**             **CIVIL ACTION NO. 04-CV-74382-DT**

    vs.

                                 **DISTRICT JUDGE JOHN CORBETT O'MEARA**

**JANET OLSZEWSKI,**       **MAGISTRATE JUDGE MONA K. MAJZOUB**
**et. al,**

       **Defendants.**
_____/

## REPORT AND RECOMMENDATION

**RECOMMENDATION:** Defendants' Motions to Dismiss (Dockets # 20 & 24) should be **GRANTED** and the instant case dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

\*\*\*

Plaintiff was allowed to proceed *in forma pauperis* and filed the instant complaint on November 19, 2004 pursuant to 42 U.S.C. § 1983 alleging various violations of his constitutional rights. In the complaint, Plaintiff names as Defendants; Janet Olszewski, Director of the Michigan Department of Community Health (MDCH), Kenneth Longton, Director of the Bureau of Forensic Mental Health Services ("BFMHS" is a division of MDCH), Roy Calley, Director of Community Mental Health Program ("CMHP" is another division of MDCH), and John Rushbrook, Regional Director of BFMHS (collectively "MDCH" Defendants). The MDCH Defendants are named only in their official capacities. Plaintiff also names as Defendants Jan Epp, Regional Health Care Administrator for the Michigan Department of Corrections (MDOC), Numa Cabrera, a psychiatrist of MDOC's Outpatient Mental Health Program, Kevin Petschow, MDOC psychologist, Marie Alcala-Cardew, Chief Psychologist at the Parnall Correctional Facility, and Bruce Wright, MDOC psychologist. On January 31, 2005, the

-1-

MDCH Defendants filed a Motion to Dismiss. The remaining Defendants filed a Motion to Dismiss and For Summary Judgment on February 1, 2005. Plaintiff filed his Responses to the Defendants' motions on February 14, 2005 and the case has been referred to the undersigned for all pretrial proceedings.

In his complaint, Plaintiff alleges that he has been diagnosed and treated for attention deficit hyperactivity disorder (ADHD) since "early childhood" (Plaintiff's Complaint, pg. 10, ¶ 43). He alleges that ADHD has caused him numerous difficulties while incarcerated (i.e., uncontrollable, violent, and aggressive behavior). For his condition, Plaintiff sought treatment through the Parnall Correctional Facility's Psychological Services Unit (PSU) and the Outpatient Mental Health Team (OPMHT). Plaintiff alleges that Defendant Petschow "informed him no treatment would follow due to constraints in the budget" (Plaintiff's Complaint, pg. 12, ¶ 52). Subsequently, Plaintiff sought treatment from Defendant Cabrera who informed him that "'admissions criteria for the OPMHT had changed, and that he anticipated that he could not admit Plaintiff for treatment in his program based on . . . ADHD.'" *Id.* at 12-13, ¶ 54. Later, Plaintiff attempted to speak to Defendant Cabrera "in front of 10 Block about his treatment needs, [but] Dr. Cabrera stated that he never would talk to a prisoner on the prison yard or anywhere outside his office and then walked away from this Plaintiff." *Id.* ¶ 57.

On September 4, 2002, Plaintiff filed a Step I grievance about his conversations with both Petschow and Cabrera. On September 26, 2004, Defendant Alcala-Cardew interviewed Plaintiff about his Step I grievance and allegedly stated that "ADHD is not a disorder that she can use to put in a referral to OPMHT and the only inmates that they can put in a referral for are those with Schizophrenia and Psychotic disorders." *Id.* ¶ 58. Defendant Alcala-Cardew offered Plaintiff counseling, "but[] Plaintiff was only allowed to go three times and then . . . was told he can't get anymore one on one counseling." *Id.* ¶ 58. Plaintiff's Step I grievance, which was reviewed by Defendant Wright, was

denied.  Plaintiff appealed to Step II which was denied by Defendant Epp who "encouraged [Plaintiff] to contact [his] family doctor, who can work in conjunction with MDOC health care to arrange for medication that can address your concerns regarding ADHD."  (Plaintiff's Exhibit C attached to Complaint). Plaintiff's Step III appeal was  denied.

>    Plaintiff further claims that
>
>> Defendants Olszewski, Longton, Calley, Rushbrook, Epp, and Wright all have made an intentional decisions [sic] to institute a practice of not treating the disorder ADHD in their Mental Health Program no matter how serious or severe the disorder maybe [sic].
>>
>> Defendants Olszewski, Longton, Calley, Rushbrook, and Wright have a custom of failing to properly train employees in the area of disorders like ADHD.
>>
>> Defendant's [sic] Olszeewski, Longton, Calley, Rushbrook, Epp, and Wright have created a policy for 'admissions criteria' into their Mental Health Program.  These guidelines preclude any prisoner with ADHD and they are outside of their state obligation to provide mental health care.

(Plaintiff's Complaint, pg. 14-15, ¶¶ 63-65).

Accordingly, Plaintiff alleges that Defendants' practices and policies violate (1) his Eighth Amendment right "to receive necessary psychological and/or psychiatric care for his severe mental disorder", (2) the Equal Protection Clause of the Fourteenth Amendment by providing treatment to individuals with psychotic disorders while "arbitrarily . . . depriv[ing] Plaintiff and others like him . . . of analogous treatment ,and (3) Title II of the American with Disabilities Act (ADA) by excluding Plaintiff from participating in several MDOC programs and services (Plaintiff's Complaint, pg. 19-22). For these alleged violations, Plaintiff seeks both declaratory relief as well as monetary damages. Defendants have moved to dismiss or for summary judgment under either Fed. R. Civ. P. 12(b) or 56(b).

**STANDARD OF REVIEW**

When considering a Rule 12(b)(6) motion to dismiss, the trial court must accept all the allegations in the complaint as true and construe the complaint liberally in favor of the plaintiff. FED. R. CIV. P. 12(b)(6); *see Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). "Dismissal of a complaint for the failure to state a claim upon which relief may be granted is appropriate only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 1997).

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56©. The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Covington v. Knox County Sch. Sys.*, 205 F.3d 912, 914 (6th Cir. 2000). Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. *Id.* A mere scintilla of evidence is insufficient to defeat a supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). While the evidence itself need not be the sort admissible at trial, the evidence must be more than the non-movant's own pleadings and affidavits. *Ashbook v. Block*, 917 F.2d 918, 921 (6th Cir. 1990); *see also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (explaining that the non-moving party may not rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact).

**ADA CLAIM**

The crux of Plaintiff's complaint is that certain prisoners who suffer from mental illness are

eligible for mental health treatment while other prisoners, like Plaintiff, who suffer from ADHD are excluded from those treatment programs under the OPMH criteria. Plaintiff contends that the admissions criteria, allegedly drafted by the MDCH Defendants, violate Title II of the ADA.

Title II of the ADA, provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "State prisons fall squarely within Title II's statutory definition of 'public entity,' which includes 'any . . . instrumentality of a State . . . or local government.'" *Pennsylvania Dep't of Corrections v. Yeskey*, 524 U.S. 206 (1997). In order to show a violation of the ADA, a plaintiff must prove that he is (1) a qualified individual with a disability, (2) that he was denied the benefits of services, programs, or activities of a public entity or otherwise subject to discrimination by such entity, and (3) that the denial or discrimination was by reason of his disability. *See* 42 U.S.C. § 12132.

Proving the first element requires that a plaintiff show that he "meets the essential eligibility requirements" for participating in the program, with or without reasonable accommodations. 42 U.S.C. § 12131(2). Admission to MDOC's Outpatient Mental Health Program is reserved to individuals suffering from schizophrenia, bipolar disorder, schizoaffective disorder, major depressive disorder, psychosis, chronic brain disorder with significant functional impairment, or other condition considered to be a severe disorder of thought or mood that significantly impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life. (*See* Exhibit 4 attached to Plaintiff's Response to Defendants' Motion to Dismiss, Outpatient Mental Health Team Services Criteria). In this case, Plaintiff fails to satisfy the first element of his ADA claim because he concedes that he does not meet the eligibility requirements for the mental health programs provided by MDOC. Plaintiff was denied admission to MDOC's mental health programs not because of his disability, but

because he did not have a qualifying disability covered by the program.  Essentially, Plaintiff argues that MDOC's outpatient mental health program should be *expanded* to offer treatment to prisoners diagnosed with ADHD. In order to sustain an ADA claim, Plaintiff must show that although he qualified for a public service, he was denied participation because of his disability.  Here, Plaintiff has made no such showing.

Although Plaintiff may argue that he is being treated differently than other prisoners suffering from mental illness, such an argument is grounded in the Equal Protection Clause of the Fourteenth Amendment and not in the ADA.  *See Bryant v. Madigan*, 84 F.3d 246 (7th Cir. 1996)(holding that a prison's failure to treat all of its disabled inmates does not state a claim under the ADA); *see also McNally v. Prison Health Servs.*, 46 F. Supp.2d 49 (D. Ma 1999).  To the extent that Plaintiff argues that the prison failed to provide adequate treatment for his condition, Plaintiff's claim is premised on the cruel and unusual punishment clause of the Eighth Amendment.  *See Rashad v. Doughty*, 4 Fed. Appx. 558 (10th Cir. 2001)(unpublished)("the failure to provide medical treatment to a disabled prisoner, while perhaps raising Eighth Amendment concerns in certain circumstances, does not constitute an ADA violation.")(internal citations omitted).

Accordingly, the Court concludes that Plaintiff has failed to state a claim under the ADA against the MDCH Defendants.

**SECTION 1983 CLAIMS**

### 1.  EQUAL PROTECTION CLAIM

Title 42 U.S.C. § 1983 creates a cause of action against those who, acting under color of state law, violate federal law.  Plaintiff asserts that MDOC's decision to offer mental health treatment for certain conditions (i.e., schizophrenia, chronic brain disorder, *etc.*,) while offering no such similar treatment for ADHD violates the Equal Protection Clause of the Fourteenth Amendment.  In order

to state an equal protection claim, a plaintiff must allege that a state actor intentionally discriminated against him because of his membership in a protected class or that the state infringed upon a fundamental right. *Henry v. Metro. Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990). Because Prisoners are not members of a protected class, *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997), and disability does not implicate a fundamental right, MDOC's admission criteria for its outpatient mental health programs is presumed valid unless it is not rationally related to a legitimate state interest. *Board of Trustees of Univ. Of Ala. v. Garrett*, 531 U.S. 356, 366 (2001)(citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985)). An equal protection claim brought under § 1983 must fail "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313 (1993); *City of Cleburne*, 473 U.S. at 440.

Here, MDOC has chosen to offer mental health treatment to those individuals suffering from severe mental illness and psychosis. While the Court also understands Plaintiff's frustration in coping with ADHD, there is a quintessential difference between the types of conditions for which MDOC offers treatments (i.e., schizophrenia) and ADHD. The severity of the former takes precedence over the latter where the State must make important decisions concerning the allocation of its scarce resources. Given MDOC's overriding interest of safety for both inmates and MDOC personnel, the Court concludes that MDOC's admissions criteria are rationally related to legitimate penological and state interests. For these reasons, Plaintiff's Equal Protection claim must fail.

### 2. EIGHTH AMENDMENT CLAIMS

Next, the Court considers the merits of Plaintiff's Eighth Amendment Claims of cruel and unusual punishment. Plaintiff alleges that Defendants Petschow, Cabrera, Alcala-Cardew, Wright, and Epp denied him medical treatment for a "serious mental disorder" and were "deliberate[ly] indifferen[t] to his obvious need for such." (Plaintiff's Complaint, pg. 21, ¶ 91).

Allegedly, Defendant Petschow refused to refer Plaintiff to the Outpatient Mental Health Department and Defendant Cabrera "refused to examine this Plaintiff and has justified his decision with 'criteria' that prohibits [sic] him from admitting prisoner's with the disability of ADHD into their program." (Plaintiff's Complaint, pg. 13, ¶ 55). To establish an Eighth Amendment violation based upon the denial of medical attention, Plaintiff must prove that Defendants acted, or failed to act, with "deliberate indifference to serious medical needs." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976)). Deliberate indifference is the reckless disregard of a substantial risk of serious harm. *See id.* at 835-36. Mere negligent inattention to a prisoner's request for assistance, or even gross negligence, does not offend substantive due process under the Fourteenth Amendment, *Davidson v. Cannon*, 474 U.S. 344 (1986), and medical malpractice does not become a constitutional violation merely because the victim is a prisoner. *Estelle*, 429 U.S. at 106. Moreover, a mere difference of opinion between a prisoner and a doctor with respect to diagnosis and treatment does not rise to the level of a constitutional deprivation. *See id.* at 107; *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Basically, there must be a knowing failure or refusal to provide urgently needed medical care, the consummate effect of which causes a residual injury which could have been prevented with timely attention, and the court must consider the wide discretion allowed prison officials in their treatment of prisoners under authorized medical procedures. *See Westlake*, 537 F.2d at 860.

Here, Plaintiff has failed to demonstrate that he was in need of urgent medical care or that the Defendants knowingly disregarded his need for the same. Even if this Court were to assume that Plaintiff's ADHD posed a serious medical condition, Plaintiff has also failed to indicate how his untreated condition led to an injury that could have been prevented by Defendants. At most, Plaintiff has expressed his disagreement with MDOC's decision to not provide medication to those individuals suffering from ADHD. Where there is simply a difference of opinion between a prisoner and prison

doctors, the requisite deliberate indifference has generally been held not to exist. *Smart v. Villar*, 547 F.2d 112, 114 (10th Cir. 1976); *Mayfield v. Craven*, 433 F.2d 873 (9th Cir. 1970). Therefore, even accepting the allegations contained in Plaintiff's complaint as true, he has failed to state a claim against Defendants Petschow and Cabrera.

Plaintiff's only allegations pertaining to Defendants Alcala-Cardew, Wright, and Epp relate to their roles in responding to Plaintiff's administrative grievances. The law is clear that merely responding to or signing a grievance form is insufficient to impose liability under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *see Manney v. Monroe*, 151 F. Supp. 2d 976 (N.D. Ill. 2001). Thus, Plaintiff has failed to state a claim upon which relief may be granted as to Defendants Alcala-Cardew, Wright, and Epp.

**NOTICE TO PARTIES REGARDING OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge. Any

objections must be labeled as "Objection #1," "Objection #2," etc.  Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains.

Dated: April 7, 2005                                s/ Mona K Majzoub
                                                         MONA K. MAJZOUB
                                                         UNITED STATES MAGISTRATE JUDGE

**Proof of Service**

     I hereby certify that a copy of this Report and Recommendation was served upon James Chamberlain and Marvin L. Bromley on this date April 07, 2005.

Dated: April 7, 2005                                s/ Lisa C. Bartlett
                                                         Courtroom Deputy